UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
                                    )
                                    )
IN RE: BOSTON SCIENTIFIC            )
CORPORATION ET AL                   )  1:05-cv-11934-DPW
SECURITIES LITIGATION               )
                                    )
                                    )
                                    )
```

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK


STATUS/SCHEDULING CONFERENCE


John Joseph Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, MA 02210
Wednesday
October 21, 2009
at 2:30 p.m.


Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

1    APPEARANCES:

2        ZIMMERMAN & REED, PLLP
         By:  Patricia A. Bloodgood, Esq.
3             Carolyn G. Anderson, Esq.
         651 Nicollet Mall
4        Minneapolis, MN 55402
         On behalf of Plaintiffs Mississippi PERS

5

         SHEARMAN & STERLING LLP
6        By:  John Gueli, Esq., Esq.
              Kirsten Nelson Cunha, Esq.
7             Christopher R. Fenton, Esq.
         599 Lexington Avenue
8        New York, NY 10022
         On behalf of the Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held in open court

2     before the Honorable Douglas P. Woodlock, United States

3     District Judge, United States District Court, District of

4     Massachusetts, at the John J. Moakley United States Courthouse,

5     One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6     Wednesday, October 21, 2009):

7          THE CLERK:  All rise.

8     (The Honorable Court entered the courtroom at 2:30 p.m.)

9          THE CLERK:  This is Civil Action 05-11934, In Re:

10    Boston Scientific Corporation, and Civil Action 08-12139,

11    Robert Hochstadt versus Boston Scientific Corporation.

12         Will counsel please identify themselves for the

13    record.

14         MS. BLOODGOOD:  Patricia Bloodgood from Zimmerman Reed

15    on behalf of the Mississippi Public Employee Retirement System

16    in case 11934.

17         MS. ANDERSON:  Good afternoon.  Carolyn Anderson from

18    Zimmerman Reed on behalf of Mississippi PERS.

19         MR. GUELI:  Good afternoon, your Honor.  John Gueli

20    with Shearman and Stearling for Boston Scientific and the

21    defendants in both actions.

22         MS. NELSON CUNHA:  Good afternoon, your Honor.

23    Kirsten Cunha from Shearman and Stearling on behalf of the

24    defendants in both actions.

25         MR. FENTON:  Good afternoon, your Honor.  Christopher

1   Fenton, also with Shearman and Stearling, on behalf of the

2   defendants.

3        THE COURT:  Well, I was concerned about both of these

4   Boston Scientific cases just not getting out of control a

5   little bit.

6        But, as I understand it, the parties in the securities

7   litigation case would prefer not to have the parties in

8   Hochstadt present for some of the discussion; is that it?

9        MR. GUELI:  Your Honor, yes.  That was a request by

10  the defendants, and I spoke with counsel for both cases, and I

11  raised it with them beforehand.

12       My concern is really, for example, with the securities

13  litigation, the motion presently before the Court talks about

14  confidential documents and inadvertently produced documents,

15  and under the terms of the confidentiality orders and

16  protective orders we negotiated in both cases we did our very

17  best to try to keep the discovery separate.  And, so, for that

18  reason, I had asked, for example, ERISA counsel if they could

19  be excused or would be excused while the Motion to Compel was

20  being discussed.

21       THE COURT:  Let us see if we get to a point where

22  there is a potential for compromise of the concerns that you

23  have expressed.  I guess the way I would like to work back on

24  this is, I want to get some sense of how many documents are we

25  really talking about here?

1          MS. BLOODGOOD:  Your Honor, are you asking about the

2     privilege motion?

3          THE COURT:  Yes.

4          MS. BLOODGOOD:  We were told in the defendant's brief

5     that there are 1,800 documents on the defendant's privilege

6     log.  We have asked for production and the overruling of the

7     privilege claim with regard to four categories of those

8     documents.  The largest category --

9          THE COURT:  No, no.  I am just taking names now; I

10    will issue an indictment later.

11         1,800 documents.  What does that mean?  Bigger than a

12    bread box?  What is it?  What are we talking about here?

13         MS. BLOODGOOD:  I haven't seen it.

14         THE COURT:  That makes two of us.

15         MR. GUELI:  I am not certain of -- I mean, that's the

16    total number of documents.  I think the specific --

17         THE COURT:  Let me cut to the chase.  The question is

18    whether I appoint a Special Master and the dimensions of the

19    undertaking I am going to ask the Special Master to take on.  I

20    want somebody who is competent to deal with attorney-client

21    privilege issues, but the Boston Scientific litigation has

22    generated conflicts throughout the City.

23         MS. BLOODGOOD:  I have a suggestion, your Honor.

24         THE COURT:  Well, I probably will accept your

25    suggestion, but I just want to get a sense of the dimensions of

6

1    this.

2         MR. GUELI:  Well, again, I think the documents that

3    are specifically the subject of the motion -- I mean, again,

4    you know, there were a thousand, or whatever the number is, on

5    the privilege log.

6         THE COURT:  1,800 is what I have been told, although I

7    have seen 1,000.

8         MR. GUELI:  As I understand it, that is not the

9    subject of the motion.  But I don't know if Ms. Bloodgood has a

10   different set.  I haven't tallied up the number, but I think

11   the privilege log entries that are the subject of the motion

12   are spelled out, and perhaps we can do the math and figure out

13   --

14        THE COURT:  So, maybe I will go back to your

15   suggestion.  What are you talking about?

16        MS. BLOODGOOD:  Okay.  In defendant's brief they told

17   us there were 1,800 documents on the privilege log, 450 of them

18   are in the category of documents of the internal recall

19   investigation.  We were told by defendants that this is the

20   largest category.  There are three other categories that

21   plaintiffs seek to have the privilege overruled.

22        If you are talking about a Special Master or a

23   Magistrate, one suggestion is, if the Court is not inclined to

24   have a Magistrate review all documents that fit those

25   categories, which I agree with Mr. Gueli would be less than

1    1,800 -- fewer than; excuse me -- the parties could submit

2    examples to the Special Master, 50 or 100 selected by each

3    side.

4            THE COURT:  Why does this have to be a Rube Goldberg

5    machine?  I still don't understand what we are talking about in

6    terms of documents, what it is.  If I said, Produce the

7    documents they are asking for, what would you do?

8            MR. GUELI:  Well, the answer, your Honor, would be

9    that the documents that are spelled out in their motion -- I

10   haven't counted them, your Honor; that is my only point.

11           THE COURT:  You have got them segregated someplace;

12   you know where they are?

13           MR. GUELI:  Yes, yes, we have.

14           THE COURT:  Do you have a box?

15           MR. GUELI:  My only hesitancy, your Honor --

16           THE COURT:  Have you weighed the box?

17           MR. GUELI:  These are on an electronic database, so I

18   haven't done that.

19           THE COURT:  Well, we will find a unit of measure that

20   is comprehensible to everyone here, but I just want to resolve

21   this.  On the other hand, I do not want to devote the time of

22   Magistrates of this court to being diverted on this excursion,

23   the destination of which remains unclear, except I am told it

24   is on an electronic database.

25           MR. GUELI:  As I understand the motion, it challenges

1    the documents that we've already -- the large part we have

2    already re-reviewed.  That number of documents is in the area

3    of -- that are being withheld right now is in the area of I

4    think about 700 documents.

5          THE COURT:  Well, that is a new figure.  We have had

6    450, we have had 1,800, we have 1,000 and 700.  Okay.  Seven

7    hundred documents; each of them the dimensions of *War and*

8    *Peace*?

9          MR. GUELI:  No.  I think many of these are e-mails, so

10   I don't have a page calculation for you.

11         THE COURT:  I express my frustration at just being

12   able to put my arms around these documents, metaphorically.

13         When a human being or a judicial officer -- they may

14   be distinct categories -- has to deal with this issue, what is

15   it that that human being is going to do?  They are going to

16   pick up something, they are going to look at it.  How many of

17   the "somethings" are they going to pick up?

18         We could say that these are smoots and that would be

19   the unit of measurement, but I am more familiar with pages.

20         MR. GUELI:  My best estimate right now is that

21   probably most of these documents are no more than three, four

22   pages, because most of them, I think, are e-mails.  And there

23   are a few that are Power Point presentations, so they run about

24   20 to 30 pages.  So, I mean, we could do the math to find out.

25         Again, my guess would be we are probably talking, if

1    you printed these out, probably two to three boxes of

2    documents.  But it is really just a guesstimate, because I

3    haven't actually tried to do that type of calculation.

4          THE COURT:  All right.  So, why don't I have a Special

5    Master look at this.  There is a dispute.  I will ask the

6    Special Master to tell me about the dispute.

7          MR. GUELI:  You mean --

8          THE COURT:  Meaning, that you people get to pay for

9    this undertaking.  For the most part, being in the Federal

10   Court is, at least in terms of taking the time of Judicial

11   Officers, a free good.  You get in here for $450 and you get to

12   consume as much time as you are able to extract from the Judge,

13   but you don't pay anything extra for it.

14         Now you've got a dispute.  Okay.  We will have a

15   Special Master decide it, and I will allocate the monies

16   between the parties over this as to the Special Master.  I

17   probably should ask what is the size of the box, but I am not

18   going to do that.  I probably should not take the time of the

19   Magistrate Judge, nor my own, to deal, at least in the first

20   cut, as a disinterested evaluator of these documents.  So, a

21   Special Master.

22         MR. GUELI:  And I understand all of that, your Honor,

23   but at the risk of being dense, I am a little unclear.  Will

24   the Special Master be asked to review everything that is

25   withheld?

1    THE COURT:  Whatever is in dispute.  Right now I am

2  not sure I know what is in dispute.

3    MR. GUELI:  This was my confusion before, because, as

4  I said, there are specific documents, privileged entries that

5  are mentioned in the motion and the categories, as

6  Ms. Bloodgood referred to, and, so, that was part of the

7  confusion at the beginning of this.

8    THE COURT:  Well, but you just told me about 700

9  documents of varying lengths filling two to three boxes.  I

10  mean, there is a universe; at some point we are going to find

11  out what the universe is.

12    If you are still uncertain about the universe, I guess

13  that is, again, another problem.  And reading through this, I

14  cannot say that I thought that I saw any smoking-gun

15  possibilities here, but if people want to pay to do this sort

16  of thing, you get to pay to do it.

17    MS. BLOODGOOD:  Does your Honor want suggestions on a

18  Special Master, or are you going to appoint one?

19    THE COURT:  Well, do you have someone in your office

20  who --

21    MS. BLOODGOOD:  I don't, no.  I just didn't know what

22  your Honor's preference was.  It sounds like we are going to

23  have a dispute on the number of documents, which surprises me

24  very much, because they were culled out in defendant's

25  responsive briefs.  So, I am surprised at his confusion as to

1   the number of documents.  There's not 700 documents.  We are

2   not talking about the redacted documents they re-reviewed.

3         It was clear when they responded to our motion that

4   there are 1,800 documents on the privilege log, which is not

5   very many, and there is some subcategory of that that are at

6   issue which can be identified, and that is the documents we are

7   talking about.

8         THE COURT:  Identified by whom?

9         MS. BLOODGOOD:  Identified by defendants, because they

10  have been described, the areas of dispute have been described

11  in our motion.

12        THE COURT:  Well, they seem to be at sixes and sevens

13  over what those documents are.

14        MS. BLOODGOOD:  It does sound like that.

15        MR. GUELI:  That actually clears it up quite a bit,

16  because if what we are talking about or what plaintiffs are

17  asking for is a Special Master to review the documents that

18  they specifically identified by category in their motion, that

19  answers the question.

20        MS. BLOODGOOD:  And I want to make sure that counsel

21  is aware that we gave some examples of those documents in our

22  brief.  Those are not just the ones we would want identified by

23  a Special Master, particularly since defendants changed their

24  privilege log after we filed that motion.  So, the descriptions

25  of those documents, we want the categories of -- the documents

1    that fit those categories, all of them, that are on the log,

2    not just the examples, reviewed by a Special Master, your

3    Honor.

4         THE COURT:  You mean everything that is on the

5    privilege log?

6         MS. BLOODGOOD:  No; the categories of documents --

7         THE COURT:  Just those that fall in those categories,

8    and you leave it up to them to figure out whether they fall in

9    those categories?

10        MS. BLOODGOOD:  I don't know that I have much choice.

11   It's quite obvious -- some of them are quite obvious because of

12   the description on the log, so it's not difficult.  The

13   description in the brief fits the description on the log, and

14   that is documents that were generated by the recall

15   investigation group, documents where an attorney is merely a cc

16   or one of many recipients, documents that refer to documents as

17   being reflecting legal advice as opposed to providing it.

18        So, the log will dictate the categories and the actual

19   documents that should be reviewed by a Special Master.

20        THE COURT:  All right.  Well, I guess the first order

21   of business is that you respond by capturing these documents

22   here and make them available and tell me in a relatively prompt

23   period of time how many we are talking about, because I am

24   concerned about what it is that I am asking someone who will be

25   a member of the Bar to undertake here.

1          So, how quickly can that be done?

2          MR. GUELI:  Today is Wednesday.  Early next week we

3    can certainly communicate to the Court --

4          THE COURT:  Well, all right.  There are some

5    scheduling issues that that raises, but we will do it that way.

6    You say you think that we are talking about two boxes, banker's

7    boxes?

8          MR. GUELI:  Your Honor, I really was just trying to

9    give a rough guesstimate if we were talking a few hundred

10   documents.

11         THE COURT:  All right.  Well, in any event, what I

12   want you to do is identify them and deliver them to the Court

13   what it is that they have asked for, deliver it to the Court by

14   no later than next Wednesday.  And I will see if in the interim

15   I can locate someone who is not going to suffer from conflicts

16   of some sort, because I am going to read conflict broadly in

17   this setting.

18         I probably should have started here, but that brings

19   me to this extension of time here.  I know you are going to say

20   you do not know what they are, so you cannot tell me what the

21   discovery is going to be.  But, as I understand it, you have

22   asked for one fact deposition that rose out of the privilege

23   issue; is that it?

24         MS. BLOODGOOD:  Yeah.  Excuse me.  Yes.  The parties

25   delayed the deposition of Mr. Sandman, the former general

1    counsel, in light of this dispute, and that deposition remains

2    to be taken, and we were thinking we would take it after this

3    dispute was resolved.

4            THE COURT:  That is the only thing that is hinging on

5    the dispute in terms of timing.  For instance, your expert

6    depositions and so on aren't hinging on this?

7            MS. BLOODGOOD:  Right, correct.

8            THE COURT:  But you want all of that done before --

9    you want the expert depositions and the deposition of Mr.

10   Sandman before the dispositive motions?

11           MS. BLOODGOOD:  Ideally, if that is --

12           THE COURT:  Well, you are in an ideal world here.

13   What does that mean?  Do you or not?  What do you want?  I

14   mean, I am trying to --

15           MS. BLOODGOOD:  I didn't make that motion on the

16   timing, your Honor; that's why I am expressing some confusion.

17           THE COURT:  I just want to be sure that I understand

18   what the parties' disposition is, and I am looking first to the

19   plaintiff, and then I will look to the defendant.  It is a

20   joint motion.

21           MS. ANDERSON:  Could plaintiff say one other word on

22   this?

23           THE COURT:  Sure.

24           MS. ANDERSON:  We would like to have the remaining

25   deposition taken prior to dispositive motions.

1          THE COURT:  Right.

2          MS. ANDERSON:  But the Court asked if there was

3    anything else that was hinging on this.  And we did ask -- the

4    defendants have a motion, and we have joined in their motion to

5    have summary judgment moved as well, because we have asked to

6    have -- a couple of defendant's expert testimonies got moved,

7    and then so summary judgment would, in effect, be hinged on

8    that as well.

9          THE COURT:  So, let me go back, then.  You are going

10   to be completing expert depositions.  You did not get to them;

11   now you want to complete them.  That is going to take some

12   period of time.  What are you talking about?

13         MS. ANDERSON:  I believe the last one is November

14   13th.  The next two weeks.

15         MR. GUELI:  They are all -- they're scheduled, and we

16   are moving forward on that.  I think the issue on the joint

17   motion, Carol -- Ms. Anderson and I agree that the parties had

18   previously, as Ms. Bloodgood stated, agreed that it would make

19   sense to put off Mr. Sandman's deposition until the privilege

20   issue is resolved, and I think we were also in agreement that

21   since that -- you know, he is a named defendant, and also

22   depending on what the rulings are on the documents, which may

23   or may not be produced or in and out of the case, it would make

24   sense to try to move -- request the Court to move the summary

25   judgment due date until that is cleared up.

1          So, that is where we are.  We have got two experts, I

2    think, remaining to be deposed.  They are both already

3    scheduled.  They will take place in November, so I don't think

4    that will really hold anything up, and it will just be

5    finishing up whatever the Special Master needs to do and then

6    scheduling and taking Mr. Sandmann's deposition.

7          THE COURT:  All right.  I am just trying to deal

8    realistically with time here.  I don't want to impose

9    unrealistic deadlines.  On the other hand, I want real

10   deadlines.  So, assume that a Special Master would be able to

11   complete the review by December 1.  Then you take Mr. Sandman's

12   deposition sometime in the month of December, right?

13         MS. ANDERSON:  That's acceptable.  Absolutely.

14         THE COURT:  And assuming that it is all done by the

15   end of the year, what are you talking about in terms of

16   dispositive motion practice?

17         MS. ANDERSON:  I believe we propose -- Mr. Grueli

18   proposes two weeks.

19         MR. GUELI:  It would be the latter half of January,

20   then, on that type of time schedule, I think.

21         THE COURT:  January only has 14 days?

22         MR. GUELI:  I'm sorry?

23         THE COURT:  The latter half of January?

24         MR. GUELI:  The latter half of January.

25         THE COURT:  Right.  So, if it's 14 days after the end

1    of the year, that suggests mid-January rather than the latter

2    half of January, unless January has developed 14 days.

3         So, I am going to set the dispositive motion date for the

4    22nd of January.  And these are real dispositive motions, not

5    just opportunities to educate me, which is a daunting task.

6              MR. GUELI:  No, your Honor.  These will be real

7    motions.

8              THE COURT:  All right.  So, response -- this is just

9    the defendants?  Are you going to file dispositive motions?

10             MS. ANDERSON:  Haven't been -- no, not at this time.

11             THE COURT:  All right.

12             MS. ANDERSON:  No, we don't intend to file a

13   dispositive motion.

14             THE COURT:  Right.  I just, when I hear reservations,

15   wonder what time they will be filed.  So, any dispositive

16   motions by January 22nd.

17             Your response by February 19.

18             I will permit a reply, that is it, on March 5th, and

19   we will set it for hearing on March 24th.  Okay?  So, that is

20   that schedule.

21             Now, back to the Special Master.  I will see who I can

22   find and designate, that individual or firm, and then I will

23   get a report and I will give you five days to respond to that

24   report if there is some objection to what the report has to

25   say.

18

1        MR. GUELI:  Just so I am clear, under the schedule you

2   are contemplating is that the Special Master's report would be

3   due by December 1?

4        THE COURT:  Yes.  By December 1, probably.

5        MR. GUELI:  Can I ask your Honor -- we deliver the

6   documents to the Court by a week from today.  I think it would

7   be helpful -- but I am interested to hear what the thoughts

8   are -- if we made a submission or some type of submission for

9   the Special Master to explain the position how -- or will there

10  be some type of actual argument or hearing in front of the

11  Special Master?

12       THE COURT:  That is what this Motion to Compel was.  I

13  did not find it very helpful, but that is what I thought it

14  was.  This has really become much more of a to-do than seems

15  otherwise to be justified.  But the parties made their choices

16  and they consume time and money as they choose.

17       But what do you propose, that you will now brief the

18  motion that was briefed before?

19       MR. GUELI:  Well, no.  I am just wondering what the

20  process would be other than just delivering, you know,

21  documents.

22       THE COURT:  This is the collection of materials that

23  are generated in connection with this (indicating).  Now, I

24  have to say that it has the nutritional sustenance of fluff,

25  but it did consume a great deal of time and apparently some

1    effort.  So, now you are telling me that you will submit these

2    documents and you will explain really what the issues are all

3    about?

4              MR. GUELI:  No, not at all, your Honor.  I am just

5    asking if the Court has a preference or suggestion for --

6              THE COURT:  I have a preference to narrow the issues

7    and deal with them as promptly as possible, and what I have

8    seen is this kind of elaborate gavotte.  So, you think it will

9    be helpful.  What do you propose?

10             MR. GUELI:  If the Special Master is going to have the

11   briefing, I don't know that much more than that would be

12   required.  I am actually just asking --

13             THE COURT:  That being this one box (indicating).

14             This has been a kind of -- I do not know what I would

15   call it -- a rope-a-dope strategy, that is what the boxing

16   trainers used to refer to it as, just, you know, move around

17   the ropes and do not get knocked down.

18             Now I would like to get to the core of it.  Do you

19   have a proposal for something additional that will sharpen this

20   matter for the Special Master?

21             MR. GUELI:  Standing here, I do not, other than, you

22   know, if -- Well, I do not, your Honor, and I wasn't meaning to

23   suggest that there was; I was just asking if the Court had a

24   suggestion.

25             So, I am fine.  I think the briefing will be more than

1    adequate for the Special Master to understand the issues.

2            THE COURT:  You mean this briefing (indicating).

3            MR. GUELI:  Yes.

4            MS. BLOODGOOD:  Your Honor, may I make a suggestion?

5            THE COURT:  Sure.  A second.

6            MS. BLOODGOOD:  A second one.  I'm pushing my luck.

7    But perhaps a Special Master could convene a conference call

8    with the parties.

9            THE COURT:  I am going to leave it to the Special

10   Master what he or she wants to do on this, in the absence of

11   some compelling explanation that there is a helpful way in

12   advance of the review of the Special Master to do that, and the

13   Special Master may well decide to have a hearing or to do it by

14   conference call or whatever --

15           MS. BLOODGOOD:  Okay.

16           THE COURT:  -- after some review.

17           MS. BLOODGOOD:  That has been my experience with

18   Special Masters; they convene conferences, and the parties do

19   interact as though they are interacting with the judge

20   together.

21           THE COURT:  Yes; that is my view too.  The question is

22   whether or not some further road map apart from this would be

23   helpful, and in the absence of some suggestion, I cannot find

24   anything, and I will let the Special Master decide what he or

25   she wants to do with it.  So, that is how I will deal with it.

1          But I really do want to try to keep this on this

2      schedule so that we can -- the dispositive motion schedule --

3      so that we can get to this and not have it roll off the tracks

4      here.  So, I will tell the Clerk's Office that there will be

5      received an *ex parte* submission of some size next week, by

6      Wednesday of next week, I will say.  That includes those

7      documents that in good faith you believe are covered by the

8      definitions that are provided of the documents that they are

9      now seeking.

10          MS. ANDERSON:  Your Honor, if I could just pose -- I'm

11     thinking if I'm the Special Master how to go about this

12     process.  And I am wondering if each of the parties were

13     allowed just to do a two-page letter just as introduction

14     summarizing that position.  I know we have already got all

15     those pages.

16          THE COURT:  Except to say, "Dear Special Master," and

17     to do it concisely, how would it differ from any of this except

18     perhaps not suffering from logorrhea?

19          MS. ANDERSON:  How I'm saying it would be different,

20     it would be more similar to what the hearing would be, that the

21     parties can give an encapsulated version, and I am just

22     thinking if we are putting --

23          THE COURT:  I think I am leaving this to the Special

24     Master.

25          MS. ANDERSON:  Okay.

1          THE COURT:  They will decide what they want to do.  Of

2     course, time is money, and you will be paying for it as opposed

3     to a free good.  And I do intend, if I find that there is

4     gamesmanship involved in this, to allocate the funds necessary

5     with some consideration of whether or not one party or the

6     other has been abusive either in asking for certain kinds of

7     discovery or withholding certain kinds of discovery.

8          But that is a different issue.  Right now it is 50/50,

9     and it will be the usual rates of whatever the Special Master

10    charges.

11         All right?  So, you have got a schedule.  I will try

12    to get identified this week the individual or firm to whom that

13    is going to be referred so you will know.  And I will simply

14    tell the Special Master that it is up to his or her judgment

15    what she wants to do in framing the issue or asking for further

16    assistance of the parties in identifying precisely what the

17    issues are.

18         So, these documents are going to show what has been

19    redacted, or is it going to be documents themselves?

20         MS. BLOODGOOD:  The subject of our motion is not the

21    redactions, your Honor.  It is all documents that were

22    completely withheld under privilege.

23         We assumed, once we had rulings on some of the

24    privilege documents, we could negotiate over the redactions, if

25    necessary.  The subject of our motion was just the documents

1    that had been withheld.

2            THE COURT:  We will go from there.  But I certainly

3    hope for everyone's sake the Crown Jewels are going to be found

4    in these two or three boxes of indeterminate size.

5            So, you have a new schedule, and you will complete the

6    expert discovery.  We will try to get this thing narrowed as

7    best we can.  Okay?

8            MR. GUELI:  Thank you.

9            THE COURT:  Thank you very much.

10   (WHEREUPON, the proceedings adjourned at 3:00 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, Brenda K. Hancock, RMR, CRR and Official Reporter

5    of the United States District Court, do hereby certify that the

6    foregoing transcript constitutes, to the best of my skill and

7    ability, a true and accurate transcription of my stenotype

8    notes taken in the matter of *In Re: Boston Scientific*

9    *Corporation et al.*, No. 1:05-cv-11934-DPW.

10

11

12

13

14   Date:December 4, 2009        */s/ Brenda K. Hancock*

15                                Brenda K. Hancock, RMR, CRR

16                                Official Court Reporter

17

18

19

20

21

22

23

24

25